The Honorable Evan BAYH, Governor; et al. Appellants (Defendants Below),

v.

INDIANA STATE BUILDING AND CONSTRUCTION TRADES COUNCIL, Northwest Indiana Building & Construction Trades Council, Debbie Sills, Rich Asciniega, Walt Biser, and Bruce Thomas, Appellees (Plaintiffs Below).

No. 45S00–9511–CV–1259.

Supreme Court of Indiana.

Dec. 23, 1996.

Pamela Carter, Attorney General, Arend J. Abel, Special Counsel for Legal Policy, Indianapolis, for Appellants.

Karl L. Mulvaney, Nana Quay–Smith, Andrea M. Roberts, Indianapolis, for Amicus Curiae, The Indiana Legal Foundation, Inc.

Stephen R. Snyder, Edward J. Ormsby, Syracuse, for Amicus Curiae, City of Warsaw.

Richard J. Darko, Mary Jane Lapointe, Indianapolis, for Amicus Curiae, Indiana State Teachers Assoc.

William R. Groth, Neil E. Gath, Indianapolis, for Appellees.

Keith E. White, George T. Patton, Jr., Indianapolis, for Amicus Curiae, Assoc. Builders & Contractors of Indiana, Inc.

Gary P. Price, Todd A. Richardson, Indianapolis, for Amicus Curiae, Nat'l Elec. Contractors Assoc., Central Indiana Chapter; Assoc. Gen. Contractors of Indiana, Inc.; Mechanical Contractors Assoc. of Indiana, Inc.; Sheet Metal & Air Cond. Contractors Nat'l Assoc., Central Indiana Chapter.

SHEPARD, Chief Justice.

Governor Evan Bayh and other named defendants appeal the Lake Superior Court's judgment enjoining enforcement of Indiana Code ch. 5–16–7, the Prevailing Wage Act, as amended by 1995 House Enrolled Acts 1598 and 1435. The trial court found that the 1995 amendments had been enacted in violation of Article IV, § 19 of the Indiana Constitution, which confines all acts, except those codifying, revising or rearranging the laws, "to one [1] subject and matters properly connected therewith." It ordered the defendants to comply with the Prevailing Wage

Act as it existed before the 1995 amendments.

The Governor appealed directly to this Court under Ind. Appellate Rule 4(A)(8). After hearing oral argument, we reversed the trial court's judgment and rescinded the injunction by order. This opinion explains the basis for that decision.

## I. Facts

In February 1995 the Indiana House Ways and Means Committee attached a rider to Engrossed House Bill 1008, a bill entitled "A Bill for an Act to Amend the Indiana Code Concerning Taxation." This rider made substantive changes to Indiana's Prevailing Wage Act, a law passed sixty years ago "to protect public works employees from substandard wages"[1] by requiring their employers to pay wages at or above "the prevailing scale of wages being paid in the immediate locality," Ind.Code Ann. § 5–16–7–1 (Burns 1994). This rider to House Bill 1008 amended the Prevailing Wage Act in several ways, the most significant of which was changing the "prevailing scale of wages" language to "average wage being paid in the county." (R. at 195.)

This amended version of House Bill 1008 containing the prevailing wage rider passed the House, but it failed to pass the Senate. Having passed one house, the language was eligible for inclusion in a conference committee report. Subsequently, House Bill 1598, which had been an environmental bill, was amended to include House Bill 1008,[2] as well as Senate Bill 455 (dealing with resource recovery tax abatement), and House Bill 1007 (dealing with, among other things, the allocation of lottery revenues and reduction of vehicle excise taxes). Also, the title of House Bill 1598 was changed to read: "AN ACT to amend the Indiana Code concerning state and local administration." The conference committee report on this bill passed the House on April 21 and the Senate on April 24. The bill went to Governor Bayh. While the Governor was contemplating whether to sign the bill or veto it, legislative negotiations continued concerning the prevailing wage.

On April 28, the contending forces reached a compromise. The product of that compromise appeared in H.E.A. 1435, "AN ACT to amend the Indiana Code concerning labor." Unlike its predecessor H.E.A. 1598, H.E.A. 1435 dealt exclusively with revisions to the Prevailing Wage Act. This act differed from H.E.A. 1598 by amending the prevailing wage standard to "common construction wage" instead of "average construction wage." It passed both houses of the General Assembly and went to the Governor. On May 1, 1995, Governor Bayh signed both H.E.A. 1598 and H.E.A. 1435 into law.

Acts to revise existing portions of the Indiana Code are reported with revision marks included. For example, the language of the code section being deleted appears in strike-out, and new language is set in bold-face. Language unchanged appears in normal type. "Printing Code," Preface to 1995 Acts, 1995 Ind. Acts at iv (1995). H.E.A. 1598's revision marks show that this act directly revises Indiana Code §§ 5–16–7–1 & –4, showing the deletions to those code sections in strike-out and 1598's additions to them in bold-face. Also, Section 8 of H.E.A. 1598 begins with the heading "IC 5–16–7–1 IS AMENDED TO READ AS FOLLOWS [EFFECTIVE JULY 1, 1995]: ...." and Section 9 repeats this statement as it corresponds to its revision of § 5–16–7–4. (R. at 116–17.) H.E.A. 1435's revision marks, on the other hand, show that this act amended H.E.A. 1598's version of §§ 5–16–7–1 & –4, showing the deletions of H.E.A. 1598's revisions in strike-out and 1435's additions in bold-face. Also, Section 1 of H.E.A. 1435 begins with the heading "*IC 5–16–7–1,* AS AMENDED BY HEA 1598–1995, *IS AMENDED TO READ* AS FOLLOWS [EFFECTIVE JULY 1, 1995]: ...." (emphasis added) and Section 2's heading repeats this statement in announcing the revision of § 5–16–7–4. (R. at 109–10.)

---

1. *Stampco Construction Co., Inc. v. Guffey,* 572 N.E.2d 510, 513 (Ind.Ct.App.1991).

2. Upon House Bill 1008's inclusion in House Bill 1598, the language "average wage being paid in the county" was changed to "average construction wage being paid in the county." (*Compare* H.B. 1008, R. at 195, *with* H.B. 1598, R. at 116.)

The appellees filed for a pre-enforcement injunction against the statute, alleging that the Prevailing Wage Act amendments violated Art. 4, § 19 of the Indiana Constitution. The trial court agreed. First, the trial court found that although H.E.A. 1598's title addressed "state and local administration," its "true subject or unifying concept" was taxation, "which was the original and dominant subject of the bills whose provisions were subsequently inserted into HEA 1598 during the final two weeks of the session, and which was the dominant subject of HB 1008 to which the prevailing [wage] rider was originally attached." (R. at 842.) Inasmuch as the object of the Prevailing Wage Act is labor, the Prevailing Wage Act could not, under Art. 4, § 19 of the Indiana Constitution, be amended by an act dealing predominantly with taxation. (R. at 844–46.) Second, after reviewing the legislative maneuvering that occurred in the promulgation of H.E.A. 1598, the trial court found that impermissible "logrolling" had occurred, something Art. 4, § 19 was designed to proscribe. (R. at 850.)

The trial court then preceded to find H.E.A. 1435 also unconstitutional. It concluded that H.E.A. 1435 was a "trailer" bill of H.E.A. 1598 whose only purpose was to amend the earlier bill. On the principle that "[a]mendments to an unconstitutional statute cannot make valid a law which was enacted in violation of the Constitution," (R. at 849), the court held that H.E.A. 1435 could not cure the unconstitutionality of H.E.A. 1598. The trial court further stated that "the logrolling tactics which produced HEA 1598 obviously played a significant role in neutralizing the Governor's veto power and producing a sham 'compromise' measure, namely HEA 1435." (R. at 851.) It said the tactics behind H.E.A. 1598 "inevitably infected, distorted and corrupted the process leading to the enactment of HEA 1435," making the latter also unconstitutional under Art. 4, § 19. (Id.)

Finally, the trial court found that insofar as all of the other sections of H.E.A. 1598 dealt with the single subject of taxation, the two sections dealing with revising the Pre-vailing Wage Act could be severed, leaving the rest of H.E.A. 1598 intact.

## II. H.E.A. 1435 is Not Unconstitutional Under Art. 4, § 19

The trial court held that H.E.A. 1435 violated Art. 4, § 19 because of its inextricable relation to H.E.A. 1598 both on its face and in what occurred behind the scenes in the passage of both acts. We will examine these two conclusions of law.

### A. H.E.A. 1435 is a Free–Standing, Complete Act Independent of H.E.A. 1598

■ H.E.A. 1435 was passed by both Houses of the General Assembly and signed by the Governor. On its face, H.E.A. 1435 concerns only one subject: the revision of Indiana's Prevailing Wage Act. Therefore, it does not violate Art. 4, § 19.

A comparison of H.E.A. 1598 and H.E.A. 1435 with respective revision marks included does show that H.E.A. 1435 was a revision of H.E.A. 1598's revisions of IC 5–16–7, but such a comparison is not relevant to consideration of the validity of an act under Art. 4, § 19. The inclusion of such marks is for researching convenience only and the marks are not part and parcel of the final laws which are passed by the General Assembly and signed by the Governor. "Printing Code," Preface to 1995 Acts, 1995 Ind. Acts at v (1995). Our concern is whether the act as finally passed is valid or not. *Jackson v. State ex rel. South Bend Motor Bus Co.*, 194 Ind. 248, 253, 142 N.E. 423, 424 (1924). What is material to the pending constitutional question is that H.E.A. 1435 embodies a complete scheme for the revision of the Prevailing Wage Act, passed by both Houses of the General Assembly, and signed by the Governor. The act's enabling language specifically states that "IC 5–16–7–1 [and –4] ... [ARE] AMENDED TO READ AS FOLLOWS," as it sets out the full texts of the new IC 5–16–7–1 and –4 which the legislature considered and passed, and which the governor considered and signed. In other words, H.E.A. 1435 does not depend upon the validity of H.E.A. 1598 for its comprehensibility or existence. The reference to H.E.A. 1598 in H.E.A. 1435's enabling language (*i.e.* "AS AMENDED BY HEA 1598")

merely indicates that H.E.A. 1435 abrogates and nullifies the prevailing wage revisions made to IC 5–16–7 by H.E.A. 1598.

The trial court saw H.E.A. 1435 not as a second amendment to Indiana Code ch. 5–16–7, but as an amendment to H.E.A. 1598. This was erroneous. The trial court found H.E.A. 1598 unconstitutional, and, because an amendment "cannot make valid an act which was invalid because it was in violation of the Constitution," *Keane v. Remy,* 201 Ind. 286, 295–96, 168 N.E. 10, 14 (Ind.1929), the court reasoned H.E.A. 1435 must also be invalid. *Keane* held that because a 1921 act violated Art. 4, § 23 of Indiana's Constitution, a 1929 amendment to that act could have no force, as it amended an act which was void. In contrast to the 1921 act in *Keane,* §§ 5–16–7–1 & –4 comprise a valid statute and amendments to these code provisions are not legal nullities. Although H.E.A. 1435's enabling language can be read to indicate that the legislature considered IC 5–16–7 previously amended by H.E.A. 1598, this consideration does not change the fact that H.E.A. 1435's purpose was *to amend IC 5–16–7,* not H.E.A. 1598. The trial court's erroneous conclusion with respect to which act H.E.A. 1435 amended led to an inappropriate application of *Keane.*

**B. The Political Proceedings Behind the Passage of an Act are Not the Proper Consideration of a Judicial Body**

■ The trial court also found 1435 unconstitutional because it was allegedly infected by impermissible "logrolling" tactics used to get H.E.A. 1598's prevailing wage revisions through both Houses of the General Assembly and the Governor's office. The trial court is correct in stating that one of the purposes of Art. 4, § 19 is to prevent "logrolling" legislation. 2 *Report of the Debates and Proceedings of the Convention for the Revision of the Constitution of the State of Indiana 1850* 1085–86 (1850); *Jackson,* 194 Ind. at 253, 142 N.E. at 424. As noted above, however, our inquiry into whether an

act violates Art. 4, § 19 ends upon review of the final act itself.

> "It is settled law in this state that, when an enrolled act is authenticated by the signatures of the presiding officers of the two houses, it will be *conclusively presumed* that the same was enacted in conformity with all the requirements of the Constitution, and that the enrolled bill contains the act as it actually passed, and it is not allowable to look to the journals of the two houses, or to other extrinsic sources, for the purpose of attacking its validity *or the manner of its enactment."*

*Roeschlein v. Thomas,* 258 Ind. 16, 25, 280 N.E.2d 581, 587 (Ind.1972) *(quoting State v. Wheeler,* 172 Ind. 578, 580, 89 N.E. 1, 2 (1909)) (emphasis in *Roeschlein* ).

This "enrolled act rule" has a long pedigree and "rests upon preserving the sanctity of the constitution's principles ... [one of which is] [t]he need to recognize and preserve the independence and separateness of each of the three branches of government and the functions to be performed by them." *Roeschlein,* 258 Ind. at 30, 280 N.E.2d at 590; *see also* Ind. Const. art. III, § 1. Having concluded that H.E.A. 1435 is an act containing one subject, passed by both Houses of the General Assembly and signed by their presiding officers, there is little room for judicial inquiry into legislative motivations, intentions, and political maneuverings. *Jackson,* 194 Ind. at 253, 142 N.E. at 424. What one person might see as evil logrolling, another might view as simple give and take. The single subject provisions of the Constitution and the enrolled act rule are designed to promote fair practice in legislating without much judicial intervention.

**III. Conclusion**

H.E.A. 1435 is a free-standing, duly enacted [3] law. Because H.E.A. 1435 does not violate Art. 4, § 19 of Indiana's Constitution, it is valid and enforceable. Accordingly, we

---

**3.** Besides their Art. 4, § 19 claim, appellees also argue that H.E.A. 1435 violates Art. 4, § 18 of the Indiana Constitution. This claim, however, was not raised at trial. "It has been uniformly held in Indiana that a constitutional question will not be considered on appeal unless it was pre-

sented in the trial court." *City of Indianapolis v. Wynn,* 239 Ind. 567, 582, 159 N.E.2d 572, 573 (1959) (citing *Jones v. Stawicki,* 233 Ind. 272, 274, 111 N.E.2d 718 (1953)). We will thus not consider here the merits of this allegation.

have reversed the decision of the trial court and rescinded the injunction.

DICKSON, SELBY and BOEHM, JJ., concur.

SULLIVAN, J., concurs with separate opinion, in which BOEHM, J., joins.

SULLIVAN, Justice, concurring.

I agree with the majority that 1995 House Enrolled Act 1435 is constitutional. This does not mean that 1995 House Enrolled Act 1598 is unconstitutional, only that it is unnecessary for our court to resolve that question. However, my own analysis of the record and the law leads me to the conclusion that H.E.A. 1598 is also constitutional. *See Dague v. Piper Aircraft Corp.*, 275 Ind. 520, 418 N.E.2d 207, 214 (1981) (collecting cases); *Dortch v. Lugar,* 255 Ind. 545, 551–552, 266 N.E.2d 25, 30–31 (1971).

BOEHM, J. joins.